1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   N.M., a minor, by and through          No. 2:25-cv-1389 WBS JDP
     Guardian Ad Litem STACIE MILLER,
13   individually and as successor in
     interest to, ESTATE OF VINTON
14   MILLER,                                 MEMORANDUM AND ORDER RE:
                                             DEFENDANTS' MOTIONS TO
15              Plaintiffs,                  DISMISS

16        v.

17   PLACER COUNTY, a municipal
     corporation; THE PLACER COUNTY
18   SHERIFF'S OFFICE, a public
     entity; PLACER COUNTY SHERIFF'S
19   OFFICER DEPUTY CORONER ERIC
     HINTZE, individually; CALIFORNIA
20   HIGHWAY PATROL, a public entity;
     CALIFORNIA HIGHWAY PATROL
21   OFFICER CLAYTON GUILLEMIN,
     individually; CALIFORNIA STATE
22   PARKS, a public entity;
     CALIFORNIA STATE PARKS OFFICER
23   MATTHEW YARBROUGH, individually,
     EVAN MATSHES, individually; NAAG
24   FORENSICS PC, an entity, and
     DOES 1 to 100, individually,
25
                Defendants.
26

27                         ----oo0oo----

28

1

1    Plaintiff Stacie Miller ("plaintiff") brought this

2 action against Placer County, the Placer County Sheriff's Office,

3 (collectively, "Placer County entities"), Deputy Coroner Eric

4 Hintze ("Hintze"), the California Highway Patrol ("CHP"), CHP

5 Officer Clayton Guillemin ("Guillemin"), California State Parks &

6 Recreation ("State Parks"), State Parks Officer Matthew Yarbrough

7 ("Yarbrough"), and one-hundred (100) fictitiously named Doe

8 defendants, in connection with the death of her spouse Vinton

9 Miller ("decedent") on January 26, 2024. (See Compl. at 2-26

10 (Docket No. 1).)  With the exception of the Doe defendants, each

11 remaining defendant (collectively, "defendants") now moves to

12 dismiss all claims. (See Docket Nos. 19, 21-22, 31.)

13 I.    Factual Background

14    The decedent lived in Placer County, worked at a ski

15 resort known as Palisades Tahoe in Olympic Valley, and struggled

16 "with mental health issues, including diagnosed schizophrenia."

17 (See Compl. at 9.)  On the morning of January 26, 2024, the

18 decedent told plaintiff that he was leaving for work despite the

19 fact that "he did not have to be at work" then.  (See id. at 10-

20 11.)  Sometime later, plaintiff learned that the decedent "was

21 driving to an unknown location in an unknown vehicle that was not

22 his and told her that someone was trying to kill him."  (See id.

23 (citation modified).)  She dialed 911 to inform law enforcement

24 about the situation.  (See id.)

25    After contacting the police, plaintiff spoke with the

26 decedent once more to encourage him to go to the nearby Olympic

27 Valley Events Center, which he agreed to do.  (See id.)  She then

28 called law enforcement once again to provide an update on where

1   she thought her husband was headed.  (See id.)  Soon after, CHP

2   officer Guillemin learned about the decedent driving "a white

3   Ford F-150 truck northbound on Highway 89 in the North Lake Tahoe

4   area, heading towards Olympic Valley in the County of Placer."

5   (See id. at 11-12 (citation modified).)

6        One of the decedent's coworkers called law enforcement

7   around the same time to notify them that he had taken a company

8   vehicle which matched the F-150's profile and drove away in it.

9   (See id. at 12.)  Guillemin began his pursuit of the decedent and

10  notified his dispatch "that he was going to make a stop on the

11  truck."  (See id. at 12-13.)  After Guillemin lost track of the

12  decedent, he began heading towards the decedent's workplace.

13  (See id. at 13.)

14        Guillemin eventually approached the decedent's supposed

15  destination and pulled over "onto the right shoulder at the

16  intersection of Highway 89 and the entrance of Olympic Valley

17  Events Center."  (See id.)  State Parks officer Yarbrough then

18  appeared and stopped his vehicle next to Guillemin's own to

19  discuss the situation.  (See id.)  While doing so, "the white

20  truck with the Palisades Tahoe logo drove past the officers, on

21  the right side of the road, heading towards Olympic Valley Events

22  Center, which is a dead-end street."  (See id. at 13-14 (citation

23  modified).)  Yarbrough "almost immediately took off at a high

24  rate of speed after the white truck" without "activating his

25  emergency sirens."  (See id. at 14 (citation modified).)

26        While nearing the dead end, Yarbrough crashed his

27  vehicle "into the driver's side of the white truck with the

28  Palisades logo that the decedent was driving."  (See id. at 14-

15.)  As both vehicles' doors opened, Guillemin appeared at the scene in his own vehicle.  (See id. at 15.)  The decedent emerged from the white truck and approached Yarbrough in his vehicle. (See id. at 15-16.)  The decedent turned around to flee, and then Yarbrough used a firearm against him.  (See id. at 16.)  The decedent was shot in the back and "immediately fell to the ground on his stomach, severely wounded."  (See id. at 18.)  Both officers shouted "drop the knife" to the decedent, which "was the first and only command they gave to him."  (See id. (citation modified).)

Yarbrough and Guillemin "then pounced on the decedent and handcuffed him."  (See id. at 18-19 (citation modified).) The officers claim that they began administering medical aid to the decedent after handcuffing him.  (See id. at 18-19.)  Neither Yarbrough nor Guillemin "called dispatch for additional medical aid for the decedent after he was shot.  Instead, the decedent was assisted by Palisades Tahoe ski patrol paramedics."  (See id. at 21.)  Nobody ever took the decedent to a hospital, and "30 to 40 minutes after he was shot," he was "pronounced dead" at the scene that morning.  (See id. at 21, 26.)

On February 1, 2024, the decedent was autopsied at the direction of the Placer County entities, which concluded that a bullet had entered his "upper back" in an autopsy report.  (See id. at 24.)  On the death certificate, Hintze noted that the decedent's cause of death was a "gunshot wound of chest."  (See id.)

II.  Procedural Background

Plaintiff brings eleven claims against defendants: (1)

4

excessive force under 42 U.S.C. § 1983 against the CHP, Guillemin (collectively, "CHP defendants"), State Parks, and Yarbrough (collectively, "State Parks defendants"); (2) violation of the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, against the Placer County entities, the CHP defendants, and the State Parks defendants; (3) negligence against the CHP defendants, the State Parks defendants, and the Placer County entities; (4) assault and battery against the CHP defendants, and the State Parks defendants; (5) violation of the American with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"), 42 U.S.C. §§ 701, 12101 against the Placer County entities, State Parks, and the CHP; (6) denial of medical care under 42 U.S.C. § 1983 against Yarbrough and Guillemin; (7) unwarranted interference with familial association under 42 U.S.C. § 1983 against the State Parks defendants, the CHP defendants, and the Placer County entities; (8) intentional infliction of emotional distress against the State Parks defendants, the CHP defendants, and the Placer County entities; (9) wrongful death, Cal. Civ. Proc. Code § 377.60, against the State Parks defendants, the CHP defendants, and the Placer County entities; (10) supervisory liability under 42 U.S.C. § 1983 against State Parks, the CHP, and the Placer County entities; and (11) fraudulent misrepresentation against Hintze and the Placer County entities.[1]  (See Compl. at 27-51.)

---

[1]    "Under California law, a cause of action is not lost by reason of a plaintiff's death."  Wheeler v. City of Santa Clara, 894 F.3d 1046, 1052-53 (9th Cir. 2018) (citing Cal. Civ. Proc. Code § 377.20).  In such a case, "a survival action can be maintained by the decedent's 'personal representative' or 'successor in interest.'"  See id. (quoting Cal. Civ. Proc. Code § 377.30).  "'Successor in interest' is defined as the

1    Defendants move to dismiss all claims under Federal

2    Rule of Civil Procedure 12(b)(6) for "failure to state a claim

3    upon which relief can be granted." See Fed. R. Civ. P.

4    12(b)(6).[2]

5    III. Discussion

6        A. Eleventh Amendment

7        In addition to moving to dismiss under Rule 12(b)(6),

8    State Parks moves to dismiss under Rule 12(b)(1) for lack of

9    subject-matter jurisdiction based on Eleventh Amendment immunity.

10   (See Docket No. 22 at 11-15 (citing Fed. R. Civ. P. 12(b)(1)).)

11   Under separate cover, the CHP joined State Parks' motion in that

12   respect.  (See Docket No. 23 at 1-2.)

13       Plaintiff concedes that the Eleventh Amendment

14   insulates the CHP and State Parks from civil liability.  (See,

15   e.g., Docket No. 22 at 13-18, Docket No. 23 at 1-2.)  "The

16   Eleventh Amendment protects states and state instrumentalities

17   from suit in federal court."  See Doe v. Regents of the Univ. of

18   Cal., 891 F.3d 1147, 1152-54 (9th Cir. 2018).  It is undisputed

19   that the CHP and State Parks are both "state instrumentalities."

20   See id.  Accordingly, the court will grant defendants' motions to

21   dismiss this action in its entirety as against defendants CHP and

22

23   beneficiary of the decedent's estate or 'other successor in
     interest who succeeds to a cause of action.'"  See id. (citation
24   modified) (quoting Cal. Civ. Proc. Code § 377.11).  Plaintiff
     attests that she is the decedent's successor in interest.  (See
25   Compl. at 3-4, 54.)

26
         [2]    At the conclusion of oral argument on August 18, 2025,
27   counsel for plaintiffs agreed to dismiss the claims of the
     decedent's minor child N.M. as well all claims as against Dr.
28   Evan Matshes and his medical practice Naag Forensics PC.

1  State Parks.

2      B. Excessive Force Under 42 U.S.C. § 1983 (Count One)

3          Defendants move to dismiss plaintiff's claims for

4  excessive force as against Yarbrough and Guillemin.  (See Compl.

5  at 27-28.)

6          To determine whether police officers' use of force was

7  excessive, "our question is whether the officers employed an

8  'objectively unreasonable' amount of force under the 'totality of

9  the circumstances.'"  See Estate of Strickland v. Nevada County,

10  69 F.4th 614, 618-20 (9th Cir. 2023) (quoting Brooks v. Clark

11  County, 828 F.3d 910, 919-20 (9th Cir. 2016)), cert. denied, 144

12  S. Ct. 599, 599 (2024).  As part of this inquiry, the court must

13  consider factors such as "the nature and quality of the intrusion

14  on the individual's Fourth Amendment interests against the

15  countervailing governmental interests at stake."  See id.

16  (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).  It must

17  also assess "the type and amount of force inflicted, the severity

18  of the crime at issue, whether the suspect posed an immediate

19  threat to the safety of the officers or others, and whether the

20  suspect was actively resisting arrest or attempting to evade

21  arrest by flight."  Id. (citation modified).

22          "Each government official is only liable for his or her

23  own misconduct.  It follows that liability may not be imposed on

24  a team effort theory that would allow the jury to lump all the

25  defendants together, rather than require it to base each

26  individual's liability on his own conduct."  See Peck v. Montoya,

27  51 F.4th 877, 888-91 (9th Cir. 2022) (citation modified).

28  "Instead, for an official to be liable for another actor's

1    depriving a third party of his constitutional rights, that

2    official must have at least the same level of intent as would be

3    required if the official were directly to deprive the third party

4    of his constitutional rights." Id. (citation modified).

5         Plaintiff alleges that Yarbrough shot the decedent in

6    the back while he faced away from the officer. (See Compl. at

7    16-19, 21, 24.) Because decedent was not actively trying to

8    escape from the scene or endanger anybody while walking away from

9    Yarbrough, this allegation is sufficient to state a claim that

10   Yarbrough used excessive force against the decedent. See Estate

11   of Aguirre v. County of Riverside, 131 F.4th 702, 704-08 (9th

12   Cir. 2025). Construing the allegations of the complaint in the

13   light most favorable to plaintiff, it can be inferred that while

14   the decedent had stolen a vehicle and evaded arrest prior to his

15   face-to-face confrontation with Yarbrough, he posed no threat to

16   the officers' safety in the moment with his back turned to them.

17   (See Compl. at 16-19, 27-31.) Therefore, the defendants' motions

18   to dismiss plaintiff's excessive force claim against Yarbrough in

19   Count One will be denied.

20        Plaintiff also alleges that Guillemin used excessive

21   force against the decedent. (See id.) Unlike Yarbrough,

22   Guillemin did not shoot or attempt to shoot the decedent, so it

23   cannot be reasonably inferred that Guillemin had the same level

24   of intent that Yarbrough did. See Peck, 51 F.4th at 888-91. The

25   complaint alleges only that Guillemin helped handcuff the

26   decedent after Yarbrough shot the decedent in the back. Another

27   judge of tis court has previously recognized that "the use of

28   handcuffs during an arrest is quite common and often a standard

1  practice and, ordinarily, the use of handcuffs during an arrest

2  is a very low quantum of force that will not constitute excessive

3  force." See Knickerbocker v. United States, No. 1:16-cv-1811 DAD

4  JLT, 2020 WL 1433141, at *4-5 (E.D. Cal. Mar. 24, 2020), aff'd,

5  858 F. App'x 243, 244 (9th Cir. 2021).

6         However, the court has acknowledged that "the manner in

7  which an individual is handcuffed may, under some circumstances,

8  amount to excessive force," such as if the handcuffs are too

9  tight.  Id. (citing Wall v. County of Orange, 364 F.3d 1107,

10  1111-12 (9th Cir. 2004)); see also Spencer v. Pew, 117 F.4th

11  1130, 1137-45 (9th Cir. 2024) (holding that police officers who

12  used a Taser repeatedly on the plaintiff, beat him repeatedly,

13  and then handcuffed him did not use excessive force until an

14  officer started "kneeling on the plaintiff after he was

15  handcuffed").  But no such facts are alleged here.  (See Compl.

16  at 19, 27-28.)  To state a claim for excessive force against

17  Guillemin, plaintiff would need to allege that Guillemin used

18  additional force against the decedent beyond just assisting in

19  handcuffing him.  (See id.)  Thus, the court will grant

20  defendants' motions to dismiss plaintiff's excessive force claim

21  against Guillemin in Count One.

22         C. Denial of Medical Care (Count Six)

23         Defendants move to dismiss plaintiff's claims for

24  unconstitutional denial of medical care against Yarbrough and

25  Guillemin under the Fourth Amendment.  (See Compl. at 39-40

26  (citing 42 U.S.C. § 1983).)

27         The Fourth Amendment requires "'objectively reasonable

28  post-arrest care,' which means that police officers must seek

9

1    'the necessary medical attention for a detainee when he has been

2    injured while being apprehended by either promptly summoning the

3    necessary medical help or by taking the injured detainee to a

4    hospital.'"  See D'Braunstein v. Cal. Highway Patrol, 131 F.4th

5    764, 769-70 (9th Cir. 2025) (quoting Tatum v. City & County of

6    San Francisco, 441 F.3d 1090, 1098-1100 (9th Cir. 2006)).  This

7    rule "does not 'require an officer to provide what hindsight

8    reveals to be the most effective medical care for an arrested

9    suspect.'"  Id.

10         Plaintiff alleges that Yarbrough and Guillemin failed

11   to provide the decedent with sufficient medical care after he was

12   shot in the back and handcuffed on the ground.  (See Compl. at

13   18-21, 39-40.)  Specifically, the complaint states that Yarbrough

14   and Guillemin attempted to "administer medical aid to the

15   decedent," but neither officer "called dispatch for additional

16   medical aid."  (See id. at 19-21.)  Because neither officer

17   "summoned medical help or took the injured arrestee to a

18   hospital," plaintiff states a claim for denial of medical care

19   against Yarbrough and Guillemin.  See Holcomb v. Ramar, No. 1:13-

20   cv-1102 AWI SKO, 2013 WL 5947621, at *3-4 (E.D. Cal. Nov. 4,

21   2013); see also Estate of F.R. v. County of Yuba, No. 2:23-cv-

22   846, 2023 WL 6130049, at *3-4 (E.D. Cal. Sept. 19, 2023) (denying

23   police officer's motion to dismiss where plaintiffs alleged that

24   the officer prevented the decedent there from receiving medical

25   aid after a third party shot him).  Accordingly, the court will

26   deny defendants' motions to dismiss plaintiff's denial of medical

27   care claims against Yarbrough and Guillemin in Count Six.

28         D.  Interference with Familial Relations in Violation of 42

1    U.S.C. § 1983 (Count Seven)

2            Defendants move to dismiss plaintiff's claims for

3    unwarranted interference with familial relations under the First

4    Amendment against Yarbrough, Guillemin, and the Placer County

5    entities.[3]  (See Compl. at 40-41.)

6            The Ninth Circuit has repeatedly dodged the question of

7    whether a widow may assert a § 1983 claim for unwarranted

8    interference with familial association for loss of her spouse.

9    See, e.g., Peck, 51 F.4th at 892-94 ("This case involves a

10   familial-association claim asserted by a spouse, rather than a

11   parent or child.  We have not previously held whether a

12   substantive due process right exists in that context, and other

13   courts of appeals have reached conflicting conclusions.");

14   Hampton v. California, No. 22-15481, 2023 WL 6443897, at *1 (9th

15   Cir. Oct. 3, 2023) (same), cert. denied sub nom. Diaz v. Polanco,

16   144 S. Ct. 2520 (2024); Estate of Elkins v. Pelayo, No. 22-16027,

17   2023 WL 9020556, at *2-3 & n.4 (9th Cir. Dec. 29, 2023) (citation

18   modified) ("This court has not established whether spouses may

19   bring a loss of companionship claim under the Fourteenth

20   Amendment.").

21           Similar claims have had mixed results in other courts.

22   In Griffin v. Strong, the Tenth Circuit considered a spousal

23   _____

24       [3]    Courts disagree on whether the First Amendment or the
     Fourteenth Amendment protects familial relations.  See Estate of

25   Chivrell v. City of Arcata (Chivrell I), 623 F. Supp. 3d 1032,
     1043-45 & n.6 (N.D. Cal. 2022) (citing IDK, Inc. v. Clark County,

26   836 F.2d 1185, 1191-93 (9th Cir. 1988)).  However, courts treat
     "the liability analysis of a familial association claim brought

27   under the First Amendment as the same as for a familial
     association claim brought under the Fourteenth Amendment."  See

28   id. (citation modified).

1   claim for unwarranted interference with familial relations and

2   reversed a judgment against a defendant police officer on that

3   claim.  See 983 F.2d 1544, 1546-49 (10th Cir. 1993).  In Harbury

4   v. Deutch, the D.C. Circuit affirmed as a matter of law the

5   dismissal of a spousal claim for unwarranted interference with

6   familial association.  See 233 F.3d 596, 604-07 (D.C. Cir. 2000).

7   However, the Supreme Court overruled its decision on other

8   grounds in Christopher v. Harbury, 536 U.S. 403, 405-06, 421-22

9   (2002).

10          As the Ninth Circuit did in Peck, this court will

11  assume that plaintiff's claim is cognizable and address whether

12  her allegations satisfy its elements, instead of deciding a

13  constitutional question on motions to dismiss under Rule

14  12(b)(6).  See 51 F.4th at 892-94.

15          To state a claim for unwarranted interference with

16  familial relations, the complaint must contain more than

17  "conclusory statements that do not allow the court to draw a

18  reasonable inference that plaintiff had the deep attachments and

19  commitments with the decedent required to merit such

20  constitutional protections."  See Chivrell I, 623 F. Supp. 3d at

21  1044-45 (citing IDK, 836 F.2d at 1192-93).

22          Plaintiff pleads that she was intimately involved in

23  the decedent's life.  (See Compl. at 3-4, 9-11.)  The complaint

24  indicates that she lived with him, bore a child with him, was

25  involved in his day-to-day life (by, inter alia, being aware of

26  his work schedule and routines), and looked out for his safety.

27  (See id.)  The complaint goes beyond "merely labelling the

28  decedent as plaintiff's spouse," and therefore plaintiff has

1   sufficiently alleged an underlying intimate relationship.  <u>See</u>

2   <u>Chivrell I</u>, 623 F. Supp. 3d at 1044-45 (citation modified).

3           However, plaintiff must also allege that "the officers'

4   conduct deprived plaintiff of her familial interest in a manner

5   that shocks the conscience."  <u>See</u> <u>Peck</u>, 51 F.4th at 892-94

6   (citation modified).  The Ninth Circuit applies a "deliberate-

7   indifference standard when officials had ample time to correct

8   their wrongful conduct.  But if the defendants had to make a snap

9   judgment because of an escalating situation, then their conduct

10  does not shock the conscience unless they acted with a purpose to

11  harm unrelated to legitimate law enforcement objectives."  <u>Id.</u>

12  (citation modified).

13          Plaintiff's allegations of the officers' misconduct can

14  be divided into at least three sets of acts: Yarbrough crashing

15  his car into the decedent's vehicle, Yarbrough shooting the

16  decedent in the back, and both officers failing to find adequate

17  medical care for the decedent after he was shot.  (<u>See</u> Compl. at

18  15-21.)

19          Plaintiff alleges that the officers had "30 to 40

20  minutes after he was shot" to connect the decedent with adequate

21  medical care.  (<u>See</u> <u>id.</u> at 21-26.)  Plaintiff thus states a claim

22  based on the third set of acts because "actual deliberation was

23  practical" under these circumstances.  <u>See</u> <u>Porter v. Osborn</u>, 546

24  F.3d 1131, 1137-38 (9th Cir. 2008) (citation modified) (quoting

25  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 850-51 (1998)).  At

26  the point that Yarbrough and Guillemin had handcuffed the

27  decedent and left him lying on the ground for 30 minutes, "an

28  escalating situation" was no longer present, and the officers had

1  "ample time to correct their wrongful conduct." See Peck, 51

2  F.4th at 892-94; see also Corbera v. Taylor, No. 2:21-cv-1998 WBS

3  KJN, 2022 WL 17741089, at *4-6 (E.D. Cal. Dec. 16, 2022) (denying

4  officer's motion to dismiss familial association claim under

5  deliberate indifference standard where officer had "approximately

6  seven minutes between the time the officer agreed to respond to

7  the call and the time of his collision with the decedent's

8  vehicle, which tends to show that he had sufficient time to

9  deliberate on his actions").  Because plaintiff sufficiently

10  alleges that the officers' conduct shocks the conscience, the

11  court need not address whether the other allegations state a

12  familial association claim.

13         Therefore, the court will deny defendants' motions to

14  dismiss plaintiff's unwarranted interference with familial

15  relations claims against Yarbrough and Guillemin in Count Seven.

16     E.  Tom Bane Act (Count Two)

17         Defendants move to dismiss plaintiff's claims for

18  violation of the Tom Bane Act against Yarbrough, Guillemin, and

19  the Placer County entities.  (See Compl. at 28-31 (citing Cal.

20  Civ. Code § 52.1).)

21         "The Tom Bane Act provides a cause of action for

22  violations of a plaintiff's state or federal civil rights

23  committed by threats, intimidation, or coercion." Reese v.

24  County of Sacramento, 888 F.3d 1030, 1040-41 & n.2 (9th Cir.

25  2018) (citation modified) (citing Cal. Civ. Code § 52.1).  "The

26  elements of an excessive force claim under the Tom Bane Act are

27  the same as under 42 U.S.C. § 1983." Id. (citation modified).

28         Because plaintiff has stated a claim that Yarbrough

1    violated the Fourth Amendment in using excessive force against

2    the decedent, she also states a claim against him under the Tom

3    Bane Act.  See Rivera v. Cater, No. 2:18-cv-56 WBS EFB, 2018 WL

4    1621095, at *3-4 (E.D. Cal. Apr. 4, 2018).  The complaint also

5    states a claim for violation of the Tom Bane Act against

6    Guillemin.  (See Compl. at 28-31, 40-41.)  Plaintiff premises

7    this claim against him upon unwarranted interference with

8    familial associations.  (See id.)  Therefore, the court will deny

9    defendants' motions to dismiss plaintiff's claim under the Tom

10   Bane Act against Yarbrough and Guillemin in Count Two.

11       F.  Negligence (Count Three)

12           Defendants move to dismiss plaintiff's claims for

13   negligence against the State Parks defendants and the CHP

14   defendants.  (See Compl. at 31-33.)

15           "Under California negligence law, 'a plaintiff must

16   show that the defendant had a duty to use due care, that he

17   breached that duty, and that the breach was the proximate or

18   legal cause of the resulting injury.'"  Tabares v. City of

19   Huntington Beach, 988 F.3d 1119, 1125-26 (9th Cir. 2021) (quoting

20   Hayes v. County of San Diego, 57 Cal. 4th 622, 628-33 (2013)).

21           "The officer's conduct must only 'fall within the range

22   of conduct that is reasonable' viewed 'in light of the totality

23   of circumstances.'"  Id. (citation modified).  "California

24   negligence law regarding the use of deadly force overall is

25   ''broader than federal Fourth Amendment law.'"  Id. (quoting

26   Villegas ex rel. C.V. v. City of Anaheim, 823 F.3d 1252, 1257-58

27   & n.6 (9th Cir. 2016)).

28           Because plaintiff states a claim for excessive force

1   against Yarbrough, she states a claim for negligence against him.

2   (See Compl. at 15, 31-33.)  The Ninth Circuit's holding in

3   Tabares that California negligence law is broader than what the

4   Fourth Amendment circumscribes means that police conduct which

5   runs afoul of the Fourth Amendment is also unreasonable.  See 988

6   F.3d at 1125-26.  However, the converse is not true: a police

7   officer's negligent conduct does not necessarily violate the

8   Fourth Amendment.  See Alves v. County of Riverside, 135 F.4th

9   1161, 1171-74 (9th Cir. 2025).  Thus, the court will deny

10  defendants' motions to dismiss plaintiff's negligence claim

11  against Yarbrough in Count Three.

12          The complaint also states a claim for negligence

13  against Guillemin.  (See Compl. at 21, 31-33, 39-40.)  It alleges

14  that Guillemin owed the decedent a duty of due care, which he

15  breached by not calling for the decedent to receive medical

16  attention, after restraining the decedent.   See Estate of F.R.,

17  2023 WL 6130049, at *3-4 (citation omitted) ("Plaintiffs allege

18  that F.R. was in custody and in need of urgent medical attention.

19  The court therefore concludes that plaintiffs have sufficiently

20  alleged that defendants owed F.R. a duty of care."); see also

21  Alves, 135 F.4th at 1171-74 (citation modified) ("The officers

22  owed the decedent a duty of due care after restraining him in

23  handcuffs and breached their duty of care by not placing him in a

24  recovery position and failing to check whether he was breathing

25  and had a pulse.").  Accordingly, the court will deny defendants'

26  motions to dismiss plaintiff's negligence claim against Guillemin

27  in Count Three.

28          G.  Battery (Count Four)

16

Under California law, a plaintiff bringing a battery claim against a police officer must show that the officer used "unreasonable force."  See Monzon v. City of Murrieta, 978 F.3d 1150, 1164-65 (9th Cir. 2020) (quoting Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1272-73 (4th Dist. 1998)).  "This analysis requires the same 'totality of the circumstances' inquiry applied to negligence claims."  McLeod v. City of Redding, No. 2:22-cv-585 WBS JDP, 2024 WL 3011227, at *7-8 (E.D. Cal. June 12, 2024) (citation modified) (quoting Hayes, 57 Cal. 4th at 639-40).

Because plaintiff pleads that Yarbrough's use of force against the decedent was unreasonable, she also states a claim for battery against him.  (See Compl. at 27-34.)  The same reasoning applies to plaintiff's allegation that Guillemin used unreasonable force against the decedent.  See id.  While Guillemin did not shoot the decedent, the complaint alleges that he negligently assisted Yarbrough in handcuffing the decedent after he had fallen to the ground wounded.  See id.  Thus, the court will deny defendants' motions to dismiss plaintiff's battery claims against Yarbrough and Guillemin in Count Four.

H. Intentional Infliction of Emotional Distress (Count Eight)

Defendants move to dismiss plaintiff's claims for intentional infliction of emotional distress against Yarbrough, Guillemin, and the Placer County Entities.  (See Compl. at 42-43.)  To state a claim for intentional infliction of emotional distress, plaintiff must show "extreme and outrageous conduct by the defendant with the intention of causing, or reckless

1  disregard of the probability of causing, emotional distress;

2  plaintiff's suffering severe or extreme emotional distress; and

3  actual and proximate causation of the emotional distress by the

4  defendant's outrageous conduct." See Catsouras v. Dep't of Cal.

5  Highway Patrol, 181 Cal. App. 4th 856, 874-75 (4th Dist. 2010)

6  (citation modified) (quoting Christensen v. Superior Ct., 54 Cal.

7  3d 868, 902-04 (1991)).

8       "Conduct to be outrageous must be so extreme as to

9  exceed all bounds of that usually tolerated in a civilized

10  community." Id. Further, "it is not enough that the conduct be

11  intentional and outrageous. It must be conduct directed at the

12  plaintiff or occur in the presence of a plaintiff of whom the

13  defendant is aware." Id. (citation modified).

14       The court concludes that plaintiff has sufficiently

15  stated claims for intentional infliction of emotional distress

16  against Yarbrough and Guillemin in Count Eight of the complaint.

17  (See Compl. at 42-43.) Plaintiff alleges that Yarbrough and

18  Guillemin "engaged in extreme conduct, with reckless disregard of

19  the probability that the decedent would suffer emotional distress

20  and did suffer severe emotional distress pre-mortem." (See id.

21  (citation modified).)

22       In Estate of F.R., this court denied a police officer's

23  motion to dismiss a claim for intentional infliction of emotional

24  distress where the defendant prevented the decedent from

25  receiving medical attention for an ultimately fatal gunshot

26  wound. See 2023 WL 6130049, at *8-9. The court will do the same

27  here because the officers' seizure of the decedent prevented him

28  from receiving medical attention and they failed to summon

18

1    medical attention for an extended period of time.  See id.

2    ("Whether defendants' conduct was sufficiently 'outrageous' to

3    support a claim for intentional infliction of emotional distress

4    is a question of fact, and therefore inappropriate for resolution

5    at the motion to dismiss stage.").  Thus, the court will deny

6    defendants' motions to dismiss plaintiff's intentional infliction

7    of emotional distress claims against Yarbrough and Guillemin in

8    Count Eight.

9        I. Wrongful Death (Count Nine)

10           "A family member may bring a state law wrongful death

11   claim to recover damages based on her own injuries resulting from

12   a decedent's death.  A plaintiff who brings a wrongful death

13   claim must plead and prove standing." Chivrell I, 623 F. Supp.

14   3d at 1045-46 (citation modified) (citing Cal. Civ. Proc. Code

15   § 377.60).  Here, plaintiff states that she was "the decedent's

16   spouse, and his successor in interest and succeeds to the

17   decedent's interest in this action." (See Compl. at 54 (citation

18   modified) (citing Cal. Civ. Proc. Code § 377.11).)  The complaint

19   also states the manner in which defendant was negligent and how

20   such negligence caused or contributed to any specified injury.

21   See Estate of Chivrell v. City of Arcata (Chivrell II), 694 F.

22   Supp. 3d 1218, 1240-41 (N.D. Cal. 2023) (citing Norgart v. Upjohn

23   Co., 21 Cal. 4th 383, 389-91 (1999)).  Further, Yarbrough's use

24   of excessive force and Guillemin's denial of medical care would

25   each suffice to meet the wrongful act or neglect element of a

26   wrongful death claim. (See Compl. at 27-34, 39-40, 43-45.)

27   Accordingly, the complaint sufficiently alleges a wrongful death

28   claim against Yarbrough and Guillemin.

1    J. <u>Fraudulent Misrepresentation (Count Eleven)</u>

2        Defendants move to dismiss plaintiff's claims for

3  fraudulent misrepresentation against Hintze and the Placer County

4  entities. (<u>See</u> Compl. at 49-50.) The elements of fraudulent

5  misrepresentation are: "defendants represented that an important

6  fact was true; that representation was false; defendants knew

7  that the representation was false when defendants made it, or

8  defendants made the representation recklessly and without regard

9  for its truth; and defendants intended that plaintiff rely on the

10  representation." <u>See</u> <u>Thomas v. Regents of the Univ. of Cal.</u>, 97

11  Cal. App. 5th 587, 637-38 (1st Dist. 2023) (citation modified).

12  Plaintiff must also show that she "reasonably relied on the

13  representation," the misrepresentation "harmed" her, and that her

14  "reliance on defendant's representation was a substantial factor

15  in causing that harm." <u>Id.</u> (citation modified).

16        Plaintiff seeks to impose fraud liability on Hintze and

17  the Placer County entities because the decedent's death

18  certificate states that he died of "a gunshot wound to the chest"

19  when the decedent was shot in the back. (<u>See</u> Compl. at 23-24,

20  49-50.)  Plaintiff does not cite any authority for the

21  proposition that the wording of the decedent's death certificate

22  is grounds for such a claim. (<u>See, e.g.</u>, Docket No. 41 at 4-8.)

23        Because she does not allege that any representation

24  defendants made to this effect was false, plaintiff fails to

25  state a claim for fraudulent misrepresentation. (<u>See</u> Compl. at

26  24, 49-51.)  Further, plaintiff does not indicate that she

27  reasonably relied on the Hintze's wording in the autopsy report

28

1  or on the death certificate.[4]  (See id.)  Thus, the court finds

2  plaintiff's fraudulent misrepresentation claims in Count Eleven

3  to be frivolous at best, and will grant defendants' motions to

4  dismiss those claims.

5      K.  Municipal Liability (Count Ten)

6          The Placer County entities move to dismiss all claims

7  against them.  (See Compl. at 28-33, 34-38, 40-51.)

8          "In California, a public entity is not liable for an

9  injury arising from an act or omission of the public entity or a

10  public employee except as provided by statute."  Doe v. L.A.

11  Cnty. Dep't of Child. & Fam. Servs., 37 Cal. App. 5th 675, 686-87

12  (2d Dist. 2019) (citing Cal. Gov't Code § 815(a)).  However, "a

13  public entity is liable for injury proximately caused by an act

14  or omission of an employee of the public entity within the scope

15  of his employment if the act or omission would have given rise to

16  a cause of action against that employee or his personal

17  representative."[5]  See Cal. Gov't Code § 815.2(a) (citation

18  modified).

19          Plaintiff concedes that the Placer County entities are

20  _____

21      [4]   At oral argument, plaintiffs' counsel was not able to
explain how her client relied at all on the language of the death

22  certificate or in the autopsy report.

23      [5]   Plaintiff brings claims against Doe 1, "a dispatcher
for the Placer County Sheriff's Office who communicated messages

24  to law enforcement agents during the incident giving rise to this
action at all material times."  (See Compl. at 6, 28-34, 39-45

25  (citation modified).)  Because Doe 1 has not moved to dismiss,
plaintiff's claims against Doe 1 and any potential vicarious

26  liability that may attach to the Placer County entities as a
result are not in front of the court at this time.  (See Docket

27  No. 39 at 8.)  Therefore, the court declines to decide whether

28  plaintiff states claims against Doe 1.

1    public entities.  (See Compl. at 4-5 (citing Cal. Gov't Code

2    § 811.2).)  Because plaintiff does not state a claim against any

3    of the Placer County entities' employees, such as Hintze,

4    plaintiff does not state a tort claim against the Placer County

5    entities either.  See Cal. Gov't Code §§ 815, 815.2(a), 815.4.

6    Therefore, the court will grant defendants' motions to dismiss

7    plaintiff's claims against the Placer County entities in Counts

8    Two, Three, Five, Eight, Nine, and Eleven.[6]

9         Plaintiff's claims against the Placer County entities

10   under 42 U.S.C. § 1983 in Counts Seven and Ten similarly fail.

11   (See Compl. at 40-41, 45-48.)  "Because § 1983 imposes liability

12   only where a state actor, 'under color of some official policy,

13   'causes' an employee to violate another's constitutional rights,'

14   Congress did not intend to impose vicarious liability on

15   municipalities 'solely on the basis of the existence of an

16   employer-employee relationship with a tortfeasor.'"  Colorado

17   City, 935 F.3d at 808-09 (quoting Monell v. Dep't of Soc. Servs.

18   of N.Y.C., 436 U.S. 658, 690-95 (1978)).  "Moreover, Congress did

19   not intend municipalities to be held liable unless action

20   pursuant to official municipal policy of some nature caused a

21   constitutional tort."  Id. (citation modified).  "Instead, to

22   establish municipal liability, a plaintiff must show that a local

23   government's policy or custom led to the plaintiff's injury."

24   Id. (citation modified).

25   _____

26        [6]    Count Five for violations of the ADA and RA is a
     federal claim, but state law mirrors federal law in terms of
27   municipal and vicarious liability for purposes of this claim.
     See United States v. Town of Colorado City, 935 F.3d 804, 808-09
28   (9th Cir. 2019).

1          Plaintiff fails to state a claim under 42 U.S.C. § 1983

2   against either of the Placer County entities because she does not

3   identify a specific "policy or custom" upon which an agent of the

4   Placer County entities acted.  See T.O. ex rel. Morris v. County

5   of Nevada, No. 2:24-cv-1131, 2024 WL 4216754, at *1-2 (E.D. Cal.

6   Sept. 17, 2024) (citation modified) (citing Monell, 436 U.S. at

7   691-95 (1978)).  Accordingly, the court will grant defendants'

8   motions to dismiss plaintiff's claims under 42 U.S.C. § 1983

9   against the Placer County entities in Counts Seven and Ten.[7]

10       L. Qualified Immunity

11          In the current preliminary posture, the court declines

12  to address whether qualified immunity shields any defendants from

13  liability.  See Keates v. Koile, 883 F.3d 1228, 1234-35 (9th Cir.

14  2018).  "While courts are permitted to consider qualified

15  immunity at the pleadings stage, the Ninth Circuit has explained

16  that doing so 'raises special problems for legal decision

17  making.'"  Jones v. City of Vallejo, No. 2:22-cv-1574 WBS JDP,

18  2024 WL 2153646, at *3-4 (E.D. Cal. May 14, 2024) (quoting

19  Keates, 883 F.3d at 1234-35).

20          "By considering qualified immunity at the pleadings

21  stage, the courts may be called upon to decide far-reaching

22  constitutional questions on a nonexistent factual record."  Id.

23  (citation modified).  "At this stage, if the operative complaint

24  _____

25          [7]    In the alternative, the court construes plaintiff's
    untimely response to Hintze and the Placer County Entities'
26  motion to dismiss as a non-opposition to it.  See L.R. 230(c).
    They moved to dismiss on June 23, 2025.  (See Docket No. 21.)
27  The parties stipulated to giving plaintiff until July 28, 2025 to
    oppose the motion.  (See Docket No. 33.)  Plaintiff did not do so
28  until August 4, 2025.  (See Docket No. 41.)

1    contains even one allegation of a harmful act that would

2    constitute a violation of a clearly established constitutional

3    right, then plaintiff is entitled to go forward with her claims."

4    Id. (citation modified).

5         As discussed above, plaintiff pleads facts which make

6    it "possible that defendants violated a clearly established

7    right" under the Fourth Amendment, such as Yarbrough's alleged

8    use of excessive force.  See id. (citation modified).  "Denial of

9    qualified immunity at this juncture therefore sheds little light

10   on whether defendants might ultimately be entitled to qualified

11   immunity once the case proceeds at least to the summary judgment

12   stage, where the court is presented with facts providing context

13   for the challenged actions."  Id. (citation modified).  Thus, the

14   court will deny defendants' motions to dismiss for qualified

15   immunity at this stage of the proceeding.[8]

16        M. Leave to Amend

17        Defendants request that the court dismiss plaintiff's

18   claims with prejudice and without leave to amend.  (See, e.g.,

19   Docket No. 22 at 15-16, 26-27.)  However, "Federal Rule of Civil

20   Procedure 15(a)(2) provides that the court should 'freely give

21   leave when justice so requires.'"  Herring Networks, Inc. v.

22   Maddow, 8 F.4th 1148, 1160-61 (9th Cir. 2021) (quoting Fed. R.

23

24        [8]   For a similar reason, the court does not reach
     defendants' arguments that plaintiff's claims should be dismissed
25   because she did not timely comply with the California Government
     Claims Act to avoid using "extrinsic evidence."  See Wilson v.
26   Timec Servs. Co., No. 2:23-cv-172 WBS KJN, 2023 WL 5753617, at
     *1-2 & n.2 (E.D. Cal. Sept. 6, 2023) (citing Fed. R. Civ. P. 12).
27   Such defenses are better suited for adjudication on a motion for
     summary judgment.  See id.  Accordingly, the CHP defendants'
28   request for judicial notice is DENIED.  (See Docket No. 19-6.)

1  Civ. P. 15(a)(2)).  "This policy is to be applied with extreme

2  liberality.'"  <u>Id.</u> (citation modified).  Given that some of the

3  described pleading defects may be curable, the court will grant

4  plaintiff leave to amend the complaint.

5          IT IS THEREFORE ORDERED that all claims by or on behalf

6  of plaintiff N.M., and all claims as against defendants Dr. Evan

7  Matshes and Naag Forensics PC be, and the same hereby are,

8  DISMISSED with prejudice;

9          IT IS FURTHER ORDERED that Count One of the complaint

10  be, and the same hereby is, DISMISSED without prejudice as

11  against defendants Guillemin, State Parks, and the CHP; Count Two

12  is DISMISSED without prejudice as against defendants Placer

13  County, the Placer County Sheriff's Office, and the CHP; Counts

14  Three, Seven, and Nine are DISMISSED without prejudice as against

15  defendants State Parks, the CHP, Placer County, and the Placer

16  County Sheriff's Office; Count Four is DISMISSED without

17  prejudice as against defendants State Parks and the CHP; and

18  Counts Five, Ten, and Eleven are DISMISSED without prejudice as

19  against all defendants; Count Eight is DISMISSED without

20  prejudice as against defendants State Parks, Placer County, and

21  the Placer County Sheriff's Office;

22          AND IT IS FURTHER ORDERED that defendants' motions to

23  dismiss be, and the same hereby are, DENIED in all other

24  respects.[9]

25          Plaintiff has twenty-one (21) days from the date of

26

27          [9]    In other words, the sole remaining claims are Count One
   against Yarbrough, and Counts Two, Three, Four, Six, Seven, Eight
28  and Nine against both Yarbrough and Guillemin.

1  this Order to file an amended complaint if she can do so

2  consistent with this Order.

3  Dated:  August 22, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

26