SHEILA L. MOHSINI, ESQ (SBN 326635)
**MOHSINI LAW, INC.**
118 E OAK AVE STE B
VISALIA, CA 93292
PH: (559) 372-7221
FAX: (559) 553-8838
E-MAIL: SHEILA@MOHSINILAW.COM

Attorney for Plaintiff

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

STACIE MILLER, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO, ESTATE OF VINTON MILLER

                                    PLAINTIFF,

vs.

PLACER COUNTY, A MUNICIPAL CORPORATION; THE PLACER COUNTY SHERIFF'S OFFICE, A PUBLIC ENTITY; CALIFORNIA HIGHWAY PATROL OFFICER CLAYTON GUILLEMIN, INDIVIDUALLY; CALIFORNIA STATE PARKS OFFICER MATTHEW YARBROUGH, INDIVIDUALLY, PLACER COUNTY DISPATCHER BROOKE RITZMAN, INDIVIDUALLY, AND DOES 1 TO 100, INDIVIDUALLY, JOINT AND SEVERALLY,

                                    DEFENDANT(S).

Case No.: 2:25-cv-01389-WBS-JDP

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER**

**DEMAND FOR JURY TRIAL**

1

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

**INTRODUCTION**

This action arises from an out of jurisdiction Defendant CALIFORNIA STATE PARKS OFFICER MATTHEW YARBROUGH and CHP OFFICER GUILLEMIN'S, pursuit; trapping; shooting; and killing of VINTON J. MILLER ("VINTON MILLER"), ratified by CALIFORNIA HIGHWAY PATROL, CALIFORNIA STATE PARKS, PLACER COUNTY SHERIFF'S OFFICE and COUNTY OF PLACER on or about January 26, 2024, in the unincorporated community of Olympic Valley, located in the County of Placer, State of California. Additionally, this is also an action arising out of the negligence in the control of the dispatch system within Placer County, which all Defendant law enforcement agencies involved used at all material times to communicate with one another.

**JURISDICTION AND VENUE**

1.  This Court has original jurisdiction of the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and §1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution). This Court has supplemental jurisdiction of the state claims under 28 U.S.C. §1367.

2.  Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. §1391(b) because Defendants are located in the Eastern District of California and/or because many of the acts and/or omissions described herein occurred in Placer County, which is under the jurisdiction of Eastern District of California.

3.  Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Eastern District of California Local Rule 120(d) because the claims

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

asserted herein arise from acts and/or omissions which occurred in the County of Placer, State of California.

**EXHAUSTION**

4.   The ESTATE OF VINTON MILLER and STACIE MILLER (on behalf of herself, and ESTATE OF VINTON MILLER) submitted a timely government claim on June 26, 2024, relating to the claims alleged in this case, pursuant to California Government Code section 910 *et. seq.*

5.   After many unanswered requests for status, Plaintiffs were informed that as of September 26, 2024, the government claim previously timely submitted was still pending.

6.   On March 28, 2025, following another lengthy period of non-response on multiple requests for status of the timely submitted claim, Plaintiffs were informed that the claim had been closed, and a notice was *intentionally* not issued to Plaintiffs. As such, this action is timely filed.

7.   Plaintiff ESTATE OF VINTON MILLER appears by and through real-parties-in-interest. Plaintiff STACIE MILLER, the wife of VINTON MILLER, brings this action pursuant to California Code of Civil Procedure §377.30 et seq., which provides for survival actions.  All Plaintiffs also bring claims pursuant to California Code of Civil Procedure § 377.60 et seq. which provides for wrongful death.  Plaintiffs also bring claims for violation of their personal federal constitutional rights to familial association.  Plaintiff STACIE MILLER brings her claims individually and on behalf of VINTON MILLER, on the basis of 42 USC §1983 and 1988, the United States Constitution, federal and California law. Plaintiff STACIE MILLER is successor-in-interest on behalf of VINTON MILLER.  Plaintiff STACIE MILLER's declaration regarding

3

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE
PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

her status as the successor-in-interest to VINTON MILLER is attached, pursuant to California Code of Civil Procedure §377.32.

8. Plaintiff STACIE MILLER is a resident of the State of California, County of Placer. Plaintiff STACIE MILLER is the wife of VINTON MILLLER. Plaintiff STACIE MILLER brings this action in a representative capacity, as a successor-in-interest on behalf of VINTON MILLER; and in an individual capacity, on behalf of herself.

9. Defendant COUNTY OF PLACER ("COUNTY") is located in California. Defendant COUNTY is a "public entity," pursuant to California Government Code Section 811.2, and owns, operates, manages, directs, and controls the PLACER COUNTY SHERIFF'S OFFICE, which employs Defendant BROOKE RITZMAN in this action.

10. Defendant PLACER COUNTY SHERIFF'S OFFICE ("PCSO") is located in the State of California, County of Placer. Defendant PCSO is a "public entity," pursuant to California Government Code Section 811.2. At all material times, Defendant PCSO was the employer of emergency dispatcher Defendant BROOKE RITZMAN. At all material times, Defendant PCSO was jointly in charge of investigation with CALIFORNIA STATE PARKS ("CA STATE PARKS") following the shooting of VINTON MILLER by a CA STATE PARKS OFFICER.

11. Defendant CALIFORNIA STATE PARKS OFFICER MATTHEW YARBROUGH ("CA STATE PARKS OFFICER YARBROUGH") was, at all times material herein, a law enforcement officer for CA STATE PARKS. CA STATE PARKS OFFICER YARBROUGH, at all material times, was acting within the scope of employment and under color of state law. Defendant CA STATE PARKS OFFICER YARBROUGH is sued in an individual capacity.

4

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

12. Defendant CALIFORNIA HIGHWAY PATROL OFFICER CLAYTON GUILLEMIN ("CHP OFFICER GUILLEMIN") was, at all times material herein, a law enforcement officer for CALIFORNIA HIGHWAY PATROL ("CHP"), acting within the scope of employment and under color of state law.  Defendant CHP OFFICER GUILLEMIN is sued in an individual capacity.

13. Defendant BROOKE RITZMAN ("PCSO DISPATCHER RITZMAN") was an employee at all material times of PCSO and COUNTY. PCSO DISPATCHER RITZMAN was a dispatcher for PCSO, communicating messages to law enforcement agents during the incident giving rise to this action at all material times.

14. DOE 1 to 100 were, and/or were agents or employees, at all material times, of Defendants COUNTY, PCSO, CA STATE PARKS OFFICER YARBROUGH, and CHP OFFICER GUILLEMIN. The true names of Defendants DOE 1 to 100, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct and liabilities alleged herein.

15. Despite Plaintiff's repeated requests for records related to the investigation into the death of VINTON MILLER from PCSO, CA STATE PARKS and The District Attorney for Defendant, COUNTY, also tasked with making findings as it related to the shooting of VINTON MILLER, CA STATE PARKS only recently provided *some* redacted copies of dash camera video, and video surveillance from the scene capturing shooting of VINTON MILLER.  Plaintiffs have received zero photos.  Further, on information and belief, Defendants

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

have instructed private citizens possibly in possession of other video surveillance of the incident as well as information not to cooperate with Plaintiff's counsel's requests for such footage or more information.

16.  PCSO and the District Attorney of Placer, whom Plaintiffs were told were investigating the matter, were fully aware that Plaintiffs faced a six-month deadline, from the date of the incident, to file a civil claim against a public entity or employee to pursue claims in state court.  PCSO's and the District Attorney of Placer's investigation being delayed to refuse to provide information to Plaintiffs effectively deprived Plaintiffs of incident-related records, information and evidence that would otherwise be available, were it not for pending investigations.  PCSO and the District Attorney of Placer County refused to allow for Plaintiffs to view any evidence, or obtain any information despite numerous lawful requests.  PCSO and the District Attorney of Placer appeared to have purposefully delayed the investigation of the shooting to deprive Plaintiffs of all of the facts to plead in the present Complaint as well as identify persons and entities, as well as their respective roles.

17. Plaintiffs are informed and believe, and thereon allege that each of the Defendants sued herein was negligently, wrongfully and otherwise responsible in some manner for the events and happenings herein described, and proximately caused injuries and damages to VINTON MILLER and Plaintiffs.  Further, and one or more of DOE defendants was at all material times responsible for hiring, training, supervision, and discipline of other defendants.

18. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all material times an agent, servant, employee, partner, joint-venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within

6

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

the course and scope of that relationship.  Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

19. At all material times, each Defendant was jointly and severally engaged in tortious activity, and was fundamentally involved in, and an integral participant to, the events and violations of rights described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

## **GENERAL ALLEGATIONS**

20. At all material times, each Defendant acted under color of the laws, statutes, ordinances and regulations of the state of California.

21. On information and belief,  on or around January 26, 2024, between approximately 9:30 A.M and 10:10 A.M, Defendant CHP OFFICER GUILLEMIN was on duty, driving in a marked, black and white, California Highway Patrol Dodge Charger and was driving northbound on Highway 89, approaching Alpine Meadows Road heading in the direction of Olympic Valley, in the County of Placer, State of California.

22. VINTON MILLER was a 29-year-old Black male, who had been struggling with mental health issues, including diagnosed schizophrenia, for which he was previously prescribed medication that Defendant PCSO was aware of based on previous calls to dispatch and recent contacts with VINTON MILLER and his wife, Plaintiff STACIE MILLER where PCSO had been previously called numerous times to do things such as aid VINTON MILLER in taking his

7

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER**

**DEMAND FOR JURY TRIAL**

prescribed medication and transport VINTON MILLER to the hospital for mental health related episodes.

23. Prior to VINTON MILLER being shot and killed by Defendant STATE PARKS OFFICER YARBROUGH on January 26, 2024, VINTON MILLER had both recently and periodically experienced mental health episodes and issues relating to his mental disability.

24. STACIE MILLER, wife of VINTON MILLER, believing law enforcement in Placer County where she is a resident could help her when VINTON MILLER had mental health episodes, had called 911 for help to Defendants PCSO numerous times between December, 2023, to January 26, 2024.

25. During the numerous times PCSO was called, VINTON MILLER was known to act irrationally, refuse to take his medication and make statements, but was never known to be violent towards law enforcement by PCSO.

26. VINTON MILLER was known to flee from law enforcement officers from PCSO, when he was approached.

27. Defendant PCSO had contacted VINTON MILLER one day prior to the incident, on January 25, 2024, relating to a mental health episode.

28. Prior to the incident, VINTON MILLER did not have any criminal convictions. Nor had VINTON MILLER ever been charged with a crime.

29. On information and belief, on the morning of January 26, 2024, VINTON MILLER was again experiencing symptoms of his mental disability, including paranoia and confusion. VINTON MILLER had been awake for almost the entirety of the night before.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

30. On information and belief, on the morning of January 26, 2024 between approximately 6:30 A.M. to 7 A.M., VINTON MILLER told his wife STACIE MILLER he was going to work at his job at Palisades Tahoe.  VINTON MILLER  became confused after his wife, Plaintiff STACIE MILLER then reminded VINTON MILLER that he did not have to be at work and needed to rest.

31. On information and belief, on January 26, 2024, at around 9:30 A.M. to 9:40 A.M., before VINTON MILLER was shot and killed, Plaintiff STACIE MILLER, while on break at work, called 911 from her job in Olympic Valley, for law enforcement assistance for her husband, as she had numerous recent times before, as she thought it would generate the appropriate police response, that police would know what was going on—that VINTON MILLER was not a threat and only needed help that she was unable to provide.  Immediately before the 911 call, Plaintiff STACIE MILLER had just spoken to VINTON MILLER, who was in state of confusion and paranoia, and had said he was driving to an unknown location–in an unknown vehicle that was not his–had told her that someone was trying to kill him.  It appeared to Plaintiff STACIE MILLER to be having another mental health episode relating to schizophrenia.  Defendant PCSO DISPATCHER RITZMAN told Plaintiff STACIE MILLER that 911 dispatch was already looking for VINTON MILLER and asked STACIE MILLER if she knew where VINTON MILLER was.  Plaintiff STACIE MILLER felt PCSO DISPATCHER RITZMAN'S must have known about VINTON MILLER and his history with law enforcement.  Plaintiff STACIE MILLER told PCSO DISPATCHER RITZMAN that she would try to find out, wanting to assist PCSO DISPATCHER RITZMAN getting help to VINTON MILLER, and ended the call.  STACIE MILLER then called VINTON MILLER again and asked him where he

9

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

was, to which VINTON MILLER said he did not know.  STACIE MILLER then asked VINTON

MILLER if he can find his way to the "HR Office" and (what VINTON MILLER knew as the

Olympic Valley Events Center).  VINTON MILLER then said he was scared but he would go

there.  STACIE MILLER then called 911 again and told the PCSO DISPATCHER RITZMAN

where VINTON MILLER was headed, so he could get help.

32. On information and belief, around the same time, multiple callers called 911 regarding a

white Ford F-150 Truck was observed driving recklessly northbound on Highway 89 in the

North Lake Tahoe area, heading towards Olympic Valley in the County of Placer, California,

which was within CALIFORNIA HIGHWAY PATROLS' jurisdiction.  It was reported that said

Ford F-150 had a Palisades Tahoe logo affixed to the side of it.  PCSO DISPATCHER

RITZMAN notified Defendant CHP OFFICER GUILLEMIN that a white truck was driving

recklessly in the area.

33. On information and belief, Defendant CHP OFFICER GUILLEMIN, was driving

northbound on Highway 89, approaching Alpine Meadows Road in CHP'S jurisdiction when he

observed a white truck with a Palisades Tahoe logo affixed to the side of it, being driven by

VINTON MILLER.

34. On information and belief,  Defendant PCSO DISPATCHER RITZMAN also received a

call between 9:20 A.M. and 9:30 A.M. from a woman identifying herself as an employee of

Palisades Human Resources ("HR 1"), told Defendant PCSO DISPATCHER RITZMAN, that

Palisades Tahoe employee VINTON MILLER was in possession of the white truck with the

Palisades Tahoe logo, and that HR 1 had heard that the white truck was stolen by VINTON from

another employee;  HR 1 told PCSO DISPATCHER RITZMAN was worried about STACIE

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE
PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

MILLER, that VINTON MILLER had refused medical treatment the day prior, and VINTON MILLER had schizophrenia. PCSO DISPATCHER RITZMAN never relayed any of this information from HR 1, nor STACIE MILLER to CHP OFFICER GUILLEMIN.

35. On information and belief, having heard from PCSO DISPATCHER RITZMAN that a white truck was driving recklessly in the area, Defendant CHP OFFICER GUILLEMIN, while driving northbound on Highway 89, approaching Alpine Meadows Road, observed a white truck, then got behind the white truck.

36. On information and belief, Defendant CHP OFFICER GUILLEMIN then notifies PCSO DISPATCHER RITZMAN that he was going to make a stop on the truck, and activated his emergency lights.

37. Defendant CHP OFFICER GUILLEMIN later estimated that the white truck slowed down for around 20 seconds, then sped up to about 35 miles per hour. Defendant CHP OFFICER GUILLEMIN continued to observe the truck, and saw it pass into an oncoming lane, after going through a right-hand curve, at one point.

38. On information and belief, between two to three minutes after Defendant CHP OFFICER GUILLEMIN began the pursuit of the white truck, he then notified PCSO DISPATCHER RITZMAN that he was going to "10-22" (cancel the pursuit), due to the white truck "going the wrong way."

39. Defendant CHP OFFICER GUILLEMIN then ends the pursuit of the white truck, turns off his emergency lights on his CHP vehicle, slows down, and then loses sight of the white truck.

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER**

**DEMAND FOR JURY TRIAL**

40. Defendant CHP OFFICER GUILLEMIN continues to travel towards Palisades Tahoe at a slow rate of speed, eventually pulling over onto the right shoulder at the intersection of Highway 89 and the entrance of Olympic Valley Events Center, at 1901 Chaminox Pl., Olympic Valley.

41. Shortly after the pursuit of the white truck was cancelled, Defendant CA STATE PARKS OFFICER YARBROUGH, outside of his jurisdiction (and in CHP's) and on his way to a meeting with his supervisor in the area and in an all-white California State Parks Chevy Tahoe, pulls up and double-parks his vehicle next to Defendant CHP OFFICER GUILLEMIN'S California Highway Patrol vehicle, so that both vehicles are parallel.

42. Defendant CHP OFFICER GUILLEMIN steps out of his vehicle, and speaks with Defendant CA STATE PARKS OFFICER YARBROUGH about the white truck with the Palisades logo.

43. During the conversation between both Defendants, the white truck with the Palisades Tahoe logo being driven by VINTON MILLER drives past the officers, on the right side of the road, heading towards Olympic Valley Events Center, which is a dead-end street and is where VINTON MILLER told his wife STACIE MILLER he would go.

44. Defendants CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN both take off at a high rate of speed after the white truck with the Palisades Tahoe logo, with CA STATE PARKS OFFICER YARBROUGH in front and CHP OFFICER GUILLEMIN driving behind, initiating a new pursuit of the white truck. CA STATE PARKS OFFICER YARBROUGH never once activated the emergency lights on top of the all-white California State Parks Tahoe he was driving. Defendant CA STATE PARKS OFFICER YARBROUGH also never activated his emergency sirens at any point.

12

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

45.  The white truck with the Palisades Tahoe logo continued driving on the right-hand side of the road and veered towards the right into the parking lot at 1901 Chamonix Place, towards Olympic Valley Events Center, which was a parking lot with a dead-end.

46. The white truck with the Palisades Tahoe logo can be seen on video surveillance from the Olympic Valley Events Center lawfully driving on the right-hand side of the dead-end parking lot, through the parking lot, and then driving to the left and under the overhang where the front of the business (or as VINTON MILLER knew, the "HR Office") is located.

47. At the same time, Defendant CA STATE PARKS OFFICER YARBROUGH was speeding on the left hand/wrong side of the dead-end parking lot, aiming directly for the white truck as if trying to trap and kill a wild animal within a California State Park. Defendant CA STATE PARKS OFFICER YARBROUGH then crashes head on into the driver's side door of the white truck with the Tahoe Palisades logo, with only the front end of his all-white Tahoe.

48. Defendant CA STATE PARKS OFFICER YARBROUGH was not attempting a pit maneuver by purposefully and intentionally crashing directly into the driver's side door of the white truck with the Tahoe Palisades logo.

49. Defendant CA STATE PARKS OFFICER YARBROUGH told PCSO during his interview three days after he trapped, shot and killed VINTON MILLER that he, Defendant CA STATE PARKS OFFICER YARBROUGH knew the parking lot was a dead-end and that he just thought the person inside of the white truck would jump out and flee on foot.  During the interview with PCSO, Defendant CA STATE PARKS OFFICER YARBROUGH continuously called the location he pursued and trapped VINTON MILLER "Squaw Valley," which had not been known by the name Squaw Valley since September of 2021.  Defendant CA STATE

13

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

PARKS OFFICER YARBROUGH relayed to PCSO that he was very familiar with the location of this incident.  PCSO detectives praised and gave positive reinforcement to Defendant CA STATE PARKS OFFICER YARBROUGH during the interview.

50. Defendant CA STATE PARKS OFFICER purposefully pursued, purposefully aimed for and purposefully crashed into the area of driver's side door of the white truck VINTON MILLER was driving.

51. Almost immediately after Defendant CA STATE PARKS OFFICER YARBROUGH crashed into the white truck, the driver's side doors to both vehicles opened.  Defendant CHP OFFICER GUILLEMIN, also present with Defendant CA STATE PARKS OFFICER YARBROUGH was in a position to intervene, but did nothing.

52. VINTON MILLER then approached Defendant CA STATE PARKS OFFICER YARBROUGH'S all white Tahoe's open driver's side door with his right arm completely down at his side, which was not in a raised position. Video surveillance does not show an object of any kind in VINTON MILLER'S hand.

53. Defendant CA STATE PARKS OFFICER YARBROUGH later claimed there was an object in VINTON MILLER'S right hand, (which Plaintiffs do not believe).

54. As VINTON MILLER gets near the open driver's side door of the California State Parks Tahoe, his person was completely outside of the vehicle, and his right arm was completely down at his side. VINTON MILLER then immediately turns around, his right arm still completely down at his side, and completely turns his back to the open door to move away from Defendant CA STATE PARKS OFFICER YARBROUGH and the CALIFORNIA STATE PARKS vehicle. Defendant CA STATE PARKS OFFICER YARBROUGH, a Defensive Tactics Instructor for the

14

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

past 17 years prior to this incident, said 3 days later that in that moment, Defendant CA STATE PARKS OFFICER YARBROUGH was focused on pulling out his firearm to shoot VINTON MILLER. Additionally, that Defendant CA STATE PARKS OFFICER YARBROUGH did not have time to deescalate the situation.

55. When VINTON MILLER, turned his back to leave is when Defendant CA STATE PARKS OFFICER YARBROUGH shoots VINTON MILLER in the upper back at some time between 9:50 A.M. to 10:10 A.M.

56. On information and belief, after VINTON MILLER was shot in the back by Defendant CA STATE PARKS OFFICER YARBROUGH, VINTON MILLER immediately falls to the ground, is on his stomach, and is actively bleeding.  VINTON MILLER was severely wounded and was in urgent need of medical attention. VINTON MILLER was not an active threat to officers.  It is then that either Defendant CA STATE PARKS OFFICER YARBOUGH or Defendant CHP OFFICER GUILLEMIN yell at VINTON MILLER, who is still on the ground, to 'drop the knife' as VINTON MILLER. This was the first and only command ever given by YARBROUGH or GUILLEMIN given to VINTON MILLER.

57. Defendant CA STATE PARKS OFFICER YARBROUGH can be heard calling VINTON MILLER by his first name immediately after he shot VINTON MILLER, showing he knew who VINTON MILLER was.

58. Defendant CA STATE PARKS OFFICER YARBROUGH and Defendant CHP OFFICER GUILLEMIN then pounce on VINTON MILLER and handcuff him, placing VINTON MILLER'S hands behind his back, while VINTON MILLER is on his stomach, is bleeding, is not an active threat and is still urgently needing medical attention.

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER**

**DEMAND FOR JURY TRIAL**

59. VINTON MILLER was heard while he was on the ground, screaming clearly and loudly 'What did I do?' to Defendants CHP OFFICER GUILLEMIN and CA STATE PARKS OFFICER YARBROUGH, confirming VINTON MILLER did not understand, was confused and had been in a state of paranoia.

60. Sometime later, several other persons from Palisades Ski Patrol Paramedics arrived on foot, moving towards VINTON MILLER, appearing as though they are trying to actually help VINTON MILLER.

61. In his first and only statement by Defendant CA STATE PARKS OFFICER YARBROUGH that PCSO gave him three days to prepare for, Defendant CA STATE PARKS OFFICER YARBOUGH would go on to say that as VINTON MILLER approached him, VINTON MILLER opened California State Parks Tahoe's driver side door; Defendant CA STATE PARKS OFFICER YARBROUGH unbuckled his seat-belt, then rolled on to his back over the center console and into the front passenger seat where Defendant CA STATE PARKS OFFICER YARBOUGH then put his legs up to kick VINTON MILLER; that VINTON MILLER then got "on top" of him; Defendant CA STATE PARKS OFFICER YARBOUGH thought VINTON MILLER was going to kill him; VINTON MILLER was not trying to flee; Defendant CA STATE PARKS OFFICER YARBOUGH thought VINTON MILLER was going to try and kill Defendant CHP OFFICER GUILLEMEN; or could harm members of the public in the area. Defensive Tactics Instructor Defendant CA STATE PARKS OFFICER YARBOUGH, who had his legs up towards VINTON MILLER–had other equipment with him besides a firearm including a 29" Baton right next to him; a Taser X26P; a Tactical Rail Flashlight, and Pepper Spray. However, Defendant CA STATE PARKS OFFICER YARBROUGH said that

16

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

there was no time or opportunity to try and deescalate the situation because VINTON MILLER was 'coming at him,' which is when Defendant CA STATE PARKS OFFICER YARBROUGH focused on pulling out his Smith and Wesson .40 cal. M&P firearm as soon as he could. Defendant CA STATE PARKS OFFICER YARBROUGH immediately pulled out his M&P firearm and shot VINTON MILLER in the back, without ever once making any verbal commands, nor identifying himself. As VINTON MILLER was shot, he still had his right hand down at his side, and his back completely turned towards Defendant CA STATE PARKS OFFICER YARBROUGH.

62. After the shootings Defendants PCSO was, jointly assigned with CA STATE PARKS to investigate the trapping, shooting and killing of VINTON MILLER, it was decided Defendant CA STATE PARKS OFFICER YARBROUGH and Defendant CHP OFFICER GUILLEMIN would be interviewed for the first time around 72 hours later.

63.  Defendant CA STATE PARKS OFFICER YARBROUGH was transported after shooting VINTON MILLER, to turn in the .40 cal. M&P Firearm that he shot VINTON MILLER with; and was then issued a new firearm the same day.

64. Defendant CA STATE PARKS OFFICER YARBROUGH and Defendant CHP OFFICER GUILLEMIN prepared statements were given around 72 hours later. Both Defendants were accompanied by their lawyers.  Both Defendants CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN confirmed during their statements that both Defendants YARBROUGH and GUILLEMIN never identified themselves, nor yelled commands at, nor spoke to, nor engaged in any de-escalation techniques whatsoever with VINTON

17

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

MILLER prior to Defendant CA STATE PARKS OFFICER YARBROUGH shooting VINTON

MILLER in the back as he was outside of the California State Parks Tahoe.

65. Defendants CA STATE PARKS OFFICER YARBROUGH AND CHP OFFICER

GUILLEMIN admitted they completely failed to utilize de-escalation and use-of-force

techniques, including those required by California Peace Officer Standards and Training

("POST") learning domains and Defendants CA STATE PARKS, and CHP policies, procedures

and general orders.  This is in addition to 17-year Veteran Defensive and Use of Force Tactics

Instructor Defendant CA STATE PARKS OFFICER YARBROUGH training other officers on

and being a 22-year veteran police officer.  For example, Defendants CA STATE PARKS

OFFICER YARBROUGH and CHP OFFICER GUILLEMIN actions were inconsistent with

POST learning domains and CHP and CA STATE PARKS policies, procedures and general

orders. Additionally, Defendants CA STATE PARKS OFFICER YARBROUGH and CHP

OFFICER GUILLEMIN's actions were inconsistent with POST learning domain 20 ("Use of

Force/De-escalation"); POST learning domain 26 ("Critical Incidents"); POST learning domain

33 ("Arrest Methods/Defensive Tactics"); POST learning domain 37 ("People with

Disabilities"); California Highway Patrol Training Guide and State Parks Training Guide.

66. Prior to Defendant CA PARKS OFFICER YARBROUGH providing a statement-- after

he and his lawyer had been given time to review all available information, including the video

that showed VINTON MILLER never entered the CA STATE PARKS Tahoe-- if Defendant CA

STATE PARKS OFFICER YARBROUGH used any de-escalation techniques he stated "I mean,

no.  I mean, it – it – he was on me instantly with the knife, and so there was nothing else I could

do besides try to stop him trying to kill me with, you know, my firearm.  Um – I didn't have time

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE
PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

to try any de-escalation or to try any other tools.  There was no distance.  I mean, like I said, he was literally on top of me."

67. VINTON MILLER'S autopsy performed by Forensic Pathologist Evan Matshes ("EVAN MATSHES") who found no stippling, tattooing or soot was on his person.  VINTON MILLER was not shot at close range.  VINTON MILLER was never seen on top of Defendant CA STATE PARKS OFFICER YARBROUGH at any point.

68. By his own words, Defendant CA STATE PARKS OFFICER YARBROUGH'S purposefully opted to remain silent, and not speak to VINTON MILLER before he shot VINTON MILLER down. Defendant CA STATE PARKS OFFICER YARBROUGH purposefully opted not to use the 29" baton he admitted was right next to him. Nor his taser that was within his reach. Nor his tactical flashlight that was within reach.  Nor his pepper spray that was within reach. CA STATE PARKS OFFICER YARBROUGH also opted not to use his legs, that he said were originally placed up in the air in order to kick VINTON MILLER if VINTON MILLER actually entered the California State Parks Tahoe.  CA STATE PARKS OFFICER YARBROUGH admitted he was only focused on "getting some rounds in him."

69. Defendant CA STATE PARKS OFFICER YARBROUGH and Defendant CHP OFFICER GUILLEMIN both did not call dispatch for additional medical aid for VINTON MILLER after he was shot and was in urgent need of medical attention.  Instead, VINTON MILLER was assisted by Palisades Tahoe Ski Patrol Paramedics.

70. VINTON MILLER continued to lay on the ground after he was shot, left to bleed out, denied the urgent medical attention that he desperately needed and was never transported to

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

Tahoe Forest Hospital in Truckee (11.9 miles away), nor to any other hospital in the surrounding area.

71. On information and belief, at around 10:29 A.M., approximately 30-40 minutes after VINTON MILLER was shot in the back by Defendant CA STATE PARKS OFFICER YARBROUGH, VINTON MILLER, still laying on the ground, was pronounced dead, over the phone, by Dr. Johnson of Tahoe Forest Hospital, with Palisades Ski Patrol Paramedic Steve Shepp.

72. At some point when VINTON MILLER was laying on the ground, Defendant CA STATE PARKS OFFICER YARBROUGH, Defendant CHP OFFICER GUILLEMIN, or PCSO seized VINTON MILLER'S green sweatshirt and any other long sleeve or short sleeve shirt VINTON MILLER was wearing but never inquired further.  PCSO DEPUTY CORONER ERIC HINTZE noted the VINTON MILLER was not wearing a shirt when he arrived, but never inquired further. VINTON MILLER'S green sweatshirt disappeared, and was never inquired of after Defendant CA STATE PARKS OFFICER YARBROUGH took it.

73. On information and belief, Defendant CA STATE PARKS OFFICER YARBROUGH, Defendant CHP OFFICER GUILLEMIN or PCSO, and/or DOE 1 to 100 destroyed, disposed of, or have otherwise hid the green sweatshirt and any other long sleeve or short sleeve shirt VINTON MILLER was wearing when Defendants CHP OFFICER GUILLEMIN and CA STATE PARKS OFFICER YARBROUGH pursued, trapped, shot, and left on the ground to die like a worthless piece of trash.

74. Sometime after 11 A.M., VINTON MILLER'S wife, Plaintiff STACIE MILLER was pulled into a conference room at her job by a member of management, and was notified by

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

PCSO DEPUTY ROSE and another unknown PCSO DEPUTY that VINTON MILLER had a knife, shot by a police officer a little after 10 A.M. and had died.

75. Plaintiff STACIE MILLER was questioned for hours in the conference room, by law enforcement, who insinuated that VINTON MILLER must have somehow wanted to commit suicide and may have left a suicide note.

76. On information and belief, around 2 P.M., PCSO and CA STATE PARKS detectives join Plaintiff STACIE MILLER in the conference room. Two chaplains also showed up. Plaintiff STACIE MILLER was told multiple times that VINTON MILLER must have been trying to commit suicide. Plaintiff STACIE MILLER was almost force-fed a story by multiple parties tasked with the investigation. After approximately 2.5 to 3 hours, STACIE MILLER was told by detectives that she needed to go back to the home she and VINTON MILLER shared. Plaintiff STACIE MILLER, feeling weary of some of the comments that had been made by detectives in the conference room, responded back to her home accompanied by one of the chaplains. When Plaintiff STACIE MILLER arrived at her home, she was surprised to notice her front door was unlocked, and Plaintiff STACIE MILLER opened the door, she observed what appeared to be Defendants DOES and/or DETECTIVES in plain clothes already inside and very busy searching her home, taking photos, and looking for a "suicide note" from VINTON MILLER (that never existed), as well as seizing all medications prescribed to VINTON MILLER for schizophrenia. Plaintiff STACIE MILLER had never given consent, nor was a search warrant obtained for the search of she and VINTON MILLER'S home.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

77. On information and belief, at the scene at 1901 Chaminox Pl. in Olympic Valley, VINTON MILLER'S body was left lying on the ground by Defendant PCSO who had taken over the investigation– like a worthless piece of trash for hours.

78. Based on information and belief, at some point in the afternoon, DEPUTY CORONER ERIC HINTZE showed up at the scene, as he was required to investigate the circumstances surrounding VINTON MILLER'S death, and eventually record VINTON MILLER'S cause of death with Defendant COUNTY.

79. On February 1, 2024, an autopsy was performed by EVAN MATSHES, Chief Forensic Pathologist and Medical Director of Defendant NAAG FORENSIC PC, hired by PCSO and COUNTY.

80. EVAN MATSHES noted inside the body of VINTON MILLER's autopsy report that there was only one perforating wound to VINTON MILLER'S upper back, with no exit wound. However, EVAN MATSHES listed VINTON MILLER'S cause of death as: gunshot wound of chest.

81. PLACER DEPUTY CORONOER HINTZE, recorded VINTON MILLER's cause of death on the Certificate of Death for Defendant COUNTY as "gunshot wound to chest"

## PARTICIPATION OF STATE OF MIND AND DAMAGES

82. All Defendants acted without authorization of state and federal law and for Defendants officers, under color of state law.

83. Plaintiffs are informed and believe, and thereon allege that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of

22

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants.

84. Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each Defendant ratified, approved or acquiesced in the violations alleged herein.

85. As joint actors with joint obligations, each Defendant was and is responsible for the failures and omissions of the other.

86. Each Defendant acted individually and in concert with the other Defendants and other DOES 1 to 100 (whose identity remains unknown) in violating Plaintiffs' rights.

87. Each Defendant acted with a deliberate indifference to or, reckless disregard for state and federal rights, including the right to adequate mental health care.

88. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, Plaintiffs have suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiffs to sustain damages in a sum to be determined at trial.  VINTON MILLER also suffered great mental and physical pain, and pain and suffering, between the time he was shot by Defendant CA STATE PARKS OFFICER YARBROUGH in the back, as he lay on the ground severely wounded, confused as to what he did wrong, to the time he died while still laying on the ground 30 to 40 minutes after he was shot.

89. As a further result of the conduct of each of these Defendants, Plaintiffs have been deprived of familial relationships, including the loss of mobility and functionality of their father and husband, VINTON MILLER, and the emotional impact on their family unit as a whole.

23

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

90. The aforementioned acts of the Defendants, and each of them, acted with evil motive and intent, was willful, wanton, malicious, oppressive, in bad faith, and done with reckless disregard or with deliberate indifference to the state and federal constitutional rights of the Plaintiffs, entitling Plaintiffs to exemplary and punitive damages from each defendant sued as an individual in an amount to be proven at the trial of this matter.

91. The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the state and federal rights of Plaintiffs.

92. By reason of the above described acts and omissions of Defendants, Plaintiffs were required to retain an attorney to institute and prosecute the within action, and to render legal assistance to Plaintiffs that they might vindicate the loss and impairment of his rights and, by reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorneys' fees pursuant to 42 U.S.C. §1988, California Civil Code §52, California Code of Civil Procedure §1021.5 and any other applicable provision of state or federal law.

### <u>COUNT ONE</u>
**Excessive Force**
**(U.S. Const. Amend. IV; 42 U.S.C §1983)**
**(Against Defendants CA STATE PARKS OFFICE YARBROUGH,**
**CHP OFFICER GUILLEMIN)**

93. Plaintiffs reallege each and every allegation in the preceding paragraphs 1 to 92 and subsequent paragraphs in this complaint as if fully set forth here.

94. By the actions and omissions described above, Defendants CA STATE PARKS OFFICER YARBROUGH, and CHP OFFICER GUILLEMIN violated 42 USC §1983, depriving Decedent

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

of the following clearly established and well-settled constitutional rights protected by the First, Fourth and Fourteenth Amendments to U.S Constitution:

    a. The right to be free from unreasonable searches and seizures as secured by the Fourth Amendment;
    b. The right to be free from excessive and unreasonable force in the course of arrest or detention, including the use of unlawful deadly force, as secured by the Fourth Amendment;
    c. The right to be free from the use of force, including deadly force, that shocks the conscience and that is used without a legitimate law enforcement purpose as secured by the Fourteenth Amendment;

95.   By the actions and omissions described above, Defendant CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN violated 42 USC §1983, depriving Plaintiffs of the following clearly established and well-settled constitutional rights protected by the First and Fourteenth Amendments to U.S Constitution:

    a. The right to be free from wrongful government interference with familial relationships, and Plaintiff's right to companionship, society and support of their husband, father, and son, as secured by the First and Fourteenth Amendment

96. Defendants CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN subjected VINTON MILLER and Plaintiffs to their wrongful conduct, depriving VINTON MILLER and Plaintiffs of their rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff's (individually and on behalf of VINTON MILLER, Deceased) and others would be violated by their acts and/or omissions.

97. Defendant CHP OFFICER GUILLEMIN had a duty to intervene on behalf of VINTON MILLER whose constitutional rights were being violated in his presence by Defendant CA STATE PARKS OFFICER MATTHEW YARBROUGH.

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER**

**DEMAND FOR JURY TRIAL**

98. Defendant CHP OFFICER GUILLEMIN observed and was in a position to intervene, to stop Defendant CA STATE PARKS OFFICER YARBROUGH's use of constitutionally unreasonable deadly force against VINTON MINTON.

99. As a direct and proximate result of Defendants CHP OFFICER GUILLEMIN and CA STATE PARKS OFFICER YARBROUGH's, act and/or omissions as set forth above, VINTON MILLER's pre-mortem pain, suffering and death and Plaintiff's sustained injuries and damages resulting in great harm entitling Plaintiffs to receive compensatory and punitive damages against Defendants CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN.

100. Plaintiffs are also entitled to reasonable costs and attorneys' fees.

101. WHEREFORE, Plaintiffs STACIE MILLER and ESTATE OF VINTON MILLER prays for relief as hereunder appears.

<u>COUNT TWO</u>
**Tom Banes Civil Rights Act**
**(Cal. Civ. Code §52.1)**
**(Against Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100)**

102. Plaintiffs reallege each and every allegation in the preceding paragraphs 1 to 92 and subsequent paragraphs in this complaint as if fully set forth here.

103. By their acts, omissions, customs, and policies, Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100, acting in concert/conspiracy and as integral participants as described above, interfered with, attempted to interfere with, and violated Plaintiff's and VINTON MILLER'S rights under California Civil Code §52.1, and the following

26

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

clearly-established rights under the United States Constitution and the California Constitution (where VINTON MILLER'S rights were violated, this count is brought as a survival claim; where Plaintiff's rights were violated, this count is brought by Plaintiff's individually):

a. VINTON MILLER'S right to be free from unreasonable search and seizures as secured by the Fourth Amendment;
b. VINTON MILLER'S right to be free from excessive and unreasonable force in the course of arrest or detention, including the use of unlawful deadly force, as secured by the Fourth Amendment;
c. VINTON MILLER'S right to be free from the use of force, including deadly force, that shocks the conscience and that is used without a legitimate law enforcement purpose as secured by the Fourteenth Amendment;
d. VINTON MILLER'S and Plaintiff's right to be free from wrongful government interference with familial relationships, and Plaintiff's right to companionship and society with VINTON MILLER, as secured by the First and Fourteenth Amendments;
e. VINTON MILLER'S right to be free from unlawful and unreasonable seizure of one's person, including the right to be free from unreasonable or excessive deadly force, as secured by the California Constitution, Article I, Section 13;
f. VINTON MILLER'S right to protection from bodily restraint, harm, or personal insult, as secured by Cal Civil Code §43.

104. Unlawful deadly force which violates the Fourteenth Amendment with reckless disregard for rights violates the Banes Act. Use of unlawful deadly force against VINTON MILLER by Defendant CA STATE PARKS OFFICER YARBROUGH, attempted interference, interference with, and violation of Plaintiffs' and VINTON MILLER'S rights, Defendants, CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN violated Plaintiffs' and VINTON MILLER'S rights by the following conduct constituting threats, intimidation, or coercion:

a. Using deliberately reckless and provocative tactics to apprehend VINTON MILLER in violation of generally accepted law enforcement training and standards, and in violation of VINTON MILLER's rights;
b. Causing VINTON MILLER to be shot, without warning and without justification; and
c. Violating VINTON MILLER'S rights to be free from unlawful seizures by both wrongful arrest and excessive force

27

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

d. Using excessive force against VINTON MILLER

105. The threat, intimidation, and coercion described herein were not necessary or inherent to any legitimate and lawful law enforcement activity.

106. Further, all of Defendants, CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1to 100's violations of duties and rights, and coercive conduct described herein, were volitional acts; none was accidental or merely negligent.

107. Further Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100's violated Plaintiff's and VINTON MILLER'S rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

108. Defendants, COUNTY, and PCSO are vicariously liable pursuant to Cal. Gov. Code §815.2.

109. As a direct and proximate result of Defendant's violation of California Civil Code §52.1, VINTON MILLER'S and Plaintiffs rights under the United States and California Constitutions, Plaintiffs (individually and for VINTON MILLER) sustained injuries and damages, and against each and every Defendant named in this Count is entitled to relief, including all damages allowed by California Civil Code §52, 52.1 and California law, not limited to costs, attorneys fees, three times actual damages, and civil penalties.

**COUNT THREE**
**(Negligence)**
**(Against Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100)**

28

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

110. Plaintiffs relate each and every preceding allegations in paragraphs 1 to 92 and subsequent paragraphs in this complaint as if fully set forth here.

111. At all times, Defendants, CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100 owed VINTON MILLER and Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

112. At all material times, each Defendants CA STATE PARKS OFFICER YARBROUGH, and CHP OFFICER GUILLEMIN, PCSO DISPATCHER RITZMAN and DOES 1 to 100, owed Plaintiffs the duty to act with reasonable care.

113. At all material times, Defendant PCSO DISPATCHER RITZMAN, hired, managed and controlled by Defendants PCSO, and COUNTY, working in conjunction with CHP, owed Plaintiffs the duty of care in informing Defendants CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN of VINTON MILLER's medical issues being provided by multiple parties, including his wife STACIE MILLER, prior to the shooting.

114. These general duties of reasonable and due care owed to VINTON MILLER and Plaintiffs by Defendants, CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PCSO DISPATCHER RITZMAN, and DOES 1 to 100 include but are not limited to the following specific obligations:

   a. to refrain from using excessive and/or unreasonable force against VINTON MILLER
   b. to refrain from unreasonably creating the situation where force, including but not limited to deadly force, is used;
   c. to refrain from abusing their authority granted them by law;
   d. to use tactics and force appropriate for a disabled, mentally ill and/or emotionally disturbed person having a medical and or psychiatric emergency;

29

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

e. to refrain from violating Plaintiff's and VINTON MILLER'S rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law

115. Additionally, these general duties of reasonable care and due care owed to Plaintiffs and VINTON MILLER by Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100, include but are not limited to the following specific obligations.

a. to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline officers under their supervision to ensure that those employees/agents/officers act at all times in the public interest and in conformance with the law;
b. to make, enforce, and at all times act in conformance with policies, training, and customs that are lawful and protective of individual rights, including Plaintiffs';
c. to refrain from making, enforcing, and/or tolerating the wrongful procedures, trainings and customs described herein.

116. Plaintiff STACIE MILLER called 911 at (time) and spoke to Defendant PCSO DISPATCHER RITZMAN to get help from law enforcement for VINTON MILLER.  PCSO DISPATCHER RITZMAN notified STACIE MILLER that law enforcement was looking for VINTON MILLER and asked if STACIE MILLER could find out where he was.  Feeling as though she could get VINTON MILLER assistance from law enforcement, STACIE MILLER then called VINTON MILLER again and then subsequently called back and spoke again to PCSO DISPATCHER RITZMAN to tell her where VINTON MILLER was driving to.

117. STACIE MILLER was under the impression, based on her conversation with PCSO DISPATCHER RITZMAN, that PCSO DISPATCHER RITZMAN was aware of who VINTON MILLER was, and his history with PCSO and that PCSO DISPATCHER RITZMAN would get VINTON MILLER help.

30

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

118. PCSO DISPATCHER RITZMAN also spoke to HR-1, who relayed to PCSO DISPATCHER RITZMAN that HR-1 was concerned about VINTON MILLER, due to his mental health episode just one day prior.

119. PCSO DISPATCHER RITZMAN had a duty of care to relay pertinent information to officers from multiple callers about information about VINTON MILLER'S mental health episode, but didn't.

120. PCSO DISPATCHER RITZMAN breached that duty by not relaying any information about VINTON MILLER'S mental health episode to Defendant CHP OFFICER GUILLEMIN, who may have used or instructed Defendant CA STATE PARKS OFFICER YARBROUGH to use de-escalation techniques pursuant to training in dealing with people suffering from mental health episodes such as identifying themselves or speaking to VINTON MILLER.

121. Due to the failure to provide any information given by multiple callers to officers by PCSO DISPATCHER RITZMAN, Defendants GUILLEMIN and YARBROUGH did not know the extent of VINTON MILLER'S mental health episode.

122. If PCSO DISPATCHER RITZMAN acted as a reasonable 911 dispatcher and relayed information that would have assisted Defendant officers in approaching VINTON MILLER, who had no history of violence towards law enforcement.  It is foreseeable if someone with information such as PCSO DISPATCHER RITZMAN had having not relayed such information to officers, that officers would solely perceive VINTON MILLER as a threat.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

123. Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PCSO DISPATCHER RITZMAN, and DOES 1 to 100 through their acts and omissions, breached each and every one of the aforementioned duties to Plaintiffs and Decedent.

124. Defendants COUNTY, and PCSO are vicariously liable pursuant to Cal. Gov. Code §815.2.

125. As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries, and damages, and is entitled to relief as set forth above, including punitive damages against individual Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMEIN, PCSO DISPATCHER RITZMAN, and DOES 1-100.

126. Plaintiffs do not seek punitive damages against Defendant COUNTY, but seek compensatory damages.

### COUNT FOUR
**(Assault and Battery)**
**(Against Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100)**

127. Plaintiffs reallege each and every allegation in the preceding paragraphs 1 to 92 and subsequent paragraphs in this complaint as if fully set forth here.

128. The actions and omissions of Defendants, CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMAN as set forth above constitute assault and battery.

129. As a direct and proximate result the assault and battery of VINTON MILLER by Defendants CA STATE PARKS OFFICER YARBROUGH, and CHP OFFICER GUILLEMIN, VINTON MILLER was subjected to pain and suffering pre-mortem and Plaintiffs sustained

32

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

injuries and damages. Plaintiffs are entitled to relief, including punitive damages against

individual Defendants CA STATE PARKS OFFICER YARBROUGH, and CHP OFFICER

GUILLEMIN. Plaintiffs do not seek punitive damages against Defendants COUNTY, and PCSO

but seek compensatory damages.

130. WHEREFORE, Plaintiffs ESTATE OF VINTON MILLER and STACIE MILLER

pray for relief as hereunder appears.

**COUNT FIVE**
**Denial of Medical Care**
**(U.S. CONST. AMEND. IV; 42 U.S.C. § 1983)**
**(Against DEFENDANTS CA STATE PARKS OFFICER YARBROUGH,**
**CHP OFFICER GUILLEMIN, PLACER DISPATCHER BROOK RITZMAN, and**
**DOES 1 to 100)**

131. Plaintiffs reallege each and every allegation in the preceding paragraphs 1 to 92 and

subsequent paragraphs in this complaint as if fully set forth here.

132. Plaintiffs, pursuant to California Code of Civil Procedure section 377.30, assert this

Claim against Defendants, CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER

GUILLEMIN, PLACER DISPATCHER BROOK RITZMAN, and DOES 1 to 100

133. Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER

GUILLEMIN, PLACER DISPATCHER BROOK RITZMAN, and DOES 1 to 100 failed to

provide VINTON MILLER with reasonable medical care, in violation of the Fourth Amendment

(as incorporated through the Fourteenth Amendment) to the U.S. Constitution.

134. Defendants CA STATE PARKS OFFICER YARBROUGH, and CHP OFFICER

GUILLEMIN's actions and inactions were motivated by evil motive or intent, involved reckless

or callous indifference to rights, or were wantonly or oppressively done.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE
PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

135. VINTON MILLER was injured and died as a direct and proximate result of Defendants CA STATE PARKS OFFICER YARBROUGH, and CHP OFFICER GUILLEMIN's actions and inactions, which constituted oppression, and/or malice, resulting in great harm and entitling Plaintiffs to receive compensatory and punitive damages against Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PLACER DISPATCHER BROOK RITZMAN, and DOES 1 to 100.

136. As a result, VINTON MILLER, was shot, suffered pre-mortem, and was killed, and was left to die on the ground, Plaintiffs have sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorneys' fees.

137. WHEREFORE, Plaintiffs ESTATE OF VINTON MILLER and STACIE MILLER pray for relief as hereunder appears.

**COUNT SIX**
**Unwarranted Interference with Familial Association**
**(U.S. Const. Amend. I; 42 U.S.C § 1983)**
**(Against Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100)**

138. The allegations in the preceding paragraphs  1 to 92 and subsequent paragraphs in this complaint as if fully set forth here.

139. Plaintiffs shared a close relationship and special bond with VINTON MILLER, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a close familial relationship, prior to the death of VINTON MILLER. Plaintiff STACIE MILLER'S sole reason for obtaining employment and moving to the County of Placer in the State of California was for her husband VINTON MILLER, and to make a better life for their biological child.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

140. Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PCSO DISPATCHER RITZMAN, and DOES 1 to 100 actions and inactions led to the pursuit, subsequent trapping and shooting of VINTON MILLER–as if he was a wild animal and also resulted in pain and suffering on a confused and severely wounded VINTON MILLER in the last moments before he died, being denied of the immediate medical attention he needed. Additionally, Defendants actions resulted in extreme pain and suffering to Plaintiffs, which Plaintiffs will continue to endure with the loss of VINTON MILLER.

141. All Defendants caused termination of, and interference with Plaintiff's familial relationship with VINTON MILLER in the violation of the First Amendment (as incorporated through the Fourteenth Amendment) to the U.S. Constitution.

142. Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to rights, or were wantonly or oppressively done.

143. Plaintiffs were injured as a direct and proximate result of Defendants  CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100's actions and inactions, entitling them to receive compensatory damages, penalties, costs and attorneys' fees against Defendants COUNTY, and PCSO.  Plaintiffs are entitled to receive punitive damages against Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PCSO DISPATCHER RITZMAN, and DOES 1 to 100.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

144. WHEREFORE, Plaintiffs ESTATE OF VINTON MILLER and STACIE MILLER pray for relief as hereunder appears.

### COUNT SEVEN
#### (Intentional Infliction of Emotional Distress)
#### (Against Defendants CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN)

145. Plaintiffs reallege each and every allegation in the preceding paragraphs 1 to 92 and subsequent paragraphs in this complaint as if fully set forth here.

146. All Defendants engaged in extreme and outrageous conduct, with evil motive and intent or reckless disregard of the probability that VINTON MILLER would suffer emotional distress and did suffer severe emotional distress pre-mortem, including among other actions, by using unreasonable and excessive force against VINTON MILLER and denying him adequate medical care.

147. Defendants CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN'S actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

148. VINTON MILLER was injured as a direct and proximate result of Defendants CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN'S actions and inactions, entitling Plaintiffs to receive compensatory damages against CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN and punitive damages against Defendants CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER GUILLEMIN.

149. WHEREFORE, Plaintiffs ESTATE OF VINTON MILLER and STACIE MILLER pray for relief as hereunder appears.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

## COUNT EIGHT
### Wrongful Death
### (Cal. Code Civ. Proc. § 377.60)
### (Against Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, CHP, CA STATE PARKS, COUNTY, PCSO, PCSO DISPATCHER RITZMAN, and DOES 1 to 100.)

150. The allegations of the preceding paragraphs 1 to 92 and subsequent paragraphs in this complaint as if fully set forth here.

151. Plaintiffs STACIE MILLER and ESTATE OF VINTON MILLER assert this claim against Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PCSO, COUNTY, PCSO DISPATCHER RITZMAN, and DOES 1 to 100 caused VINTON MILLER'S death by wrongful acts and neglect, including, among other actions, by employing improper tactical conduct and decisions preceding the use of excessive force against VINTON MILLER; by failing to act reasonably with VINTON MILLER while he was having a mental health episode; and by denying medical care to VINTON MILLER.

152. Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PCSO, COUNTY, PCSO DISPATCHER RITZMAN, and DOES 1 to 100 caused VINTON MILLER'S death by wrongful acts and neglect, including among other actions, by failing to provide VINTON MILLER with reasonable medical care for his mental health crisis.

153. Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PCSO, COUNTY, PCSO DISPATCHER RITZMAN, and DOES 1 to 100 caused VINTON MILLER'S death by wrongful acts and neglect, including among other actions, by maintaining policies or customs of action and inaction which resulted in harm and death to VINTON MILLER.

37

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

154. Defendants COUNTY, and PCSO are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code section 815.2(a), for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants PCSO DISPATCHER RITZMAN, and DOES 1 to 100.

155. Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PCSO, COUNTY, PCSO DISPATCHER RITZMAN, and DOES 1 to 100's actions and inactions constituted oppression, fraud and/or malice resulting in great harm.

156. VINTON MILLER's direct and proximate result of Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PCSO, COUNTY, PCSO DISPATCHER RITZMAN, and DOES 1 to 100's actions and inactions, entitling Plaintiffs to receive compensatory damages and expenses against Defendants COUNTY, and PCSO; and punitive damages against Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER GUILLEMIN, PCSO DISPATCHER RITZMAN, and DOES 1 to 100.

157. WHEREFORE, Plaintiffs ESTATE OF VINTON MILLER and STACIE MILLER pray for relief as hereunder appears.

<div align="center">

**<u>COUNT NINE</u>**
**Supervisor Liability**
**(42 USC §1983)**
**(Against Defendants COUNTY and PCSO)**

</div>

158. Plaintiffs reallege each and every allegation in the preceding paragraphs 1 to 100 in this Complaint as if fully set forth in this Claim.

159. At all material times, Defendants COUNTY, and PCSO had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline all their officers, as well as all other employees and agents.  Defendants

<div align="center">38</div>

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER**

**DEMAND FOR JURY TRIAL**

COUNTY and PCSO had the duty and responsibility to hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline officers, employees and agents such as PCSO DISPATCHER RITZMAN who was given information by multiple callers about VINTON MILLER's mental health issues, prior to VINTON MILLER being shot.

160. Plaintiffs are informed and believe and thereon allege that Defendants knew, or in the exercise of reasonable care should have known, of a history and propensity and pattern, prior to and after the time of the use of excessive force upon VINTON MILLER, for deputies to use excessive force, use unreasonable police tactics which lead to the unnecessary and unreasonable use of excessive force, to fail to provide access to necessary psychological services when given notice that an individual is suffering from a mental health episode, or to use unreasonable, out-of-policy or unconstitutional police tactics to investigate police use of force incidents.

161. Defendants COUNTY, and PCSO failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and/or discipline employees, including Defendants PSCO DISPATCHER RITZMAN, DOES 1 to 100 and other personnel, with deliberate indifference to Plaintiffs', Decedent's, and other's constitutional rights, which were thereby violated as described above.

162. As supervisors, Defendants COUNTY, and PCSO, each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of VINTON MILLER.  Each of these supervising Defendants COUNTY, and PCSO either directed his or her subordinates in conduct that

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

violated Decedent's rights, OR set in motion a series of acts and omissions by his or her

subordinates that the supervisor knew or reasonably should have known would deprive

Decedent of rights, OR knew his or her subordinates were engaging in acts likely to deprive

Decedent of rights and failed to act to prevent his or her subordinate from engaging in such

conduct, OR disregarded the consequence of a known or obvious training deficiency that he or

she must have known would cause subordinates to violate Decedent's rights, and in fact did

cause the violation of Decedent's rights.

163. On information and belief, Defendants COUNTY and PCSO, have approved and

ratified of the conduct and decisions of Defendants PCSO DISPATCHER RITZMAN, and

DOES 1 to 100 in this matter, and have made a deliberate choice to endorse such conduct and

decisions, and the basis for them, that resulted in the death of VINTON MILLER.

164. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that

Defendants PCSO and COUNTY. other policy-making officers were and are aware of a pattern

of misconduct and injury, and a code of silence, caused by law enforcement officers similar to

the conduct of Defendants described herein, but failed to discipline culpable law enforcement

officers and employees and failed to institute new procedures and policy.

165. The aforementioned customs, policies, practices, and procedures; the failures to

properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and

discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful

conduct Defendants PCSO DISPATCHER RITZMAN, and DOES 1 to 100, were a moving

force and/or a proximate cause of the deprivations of Decedent's clearly established and well-

settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE
PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

166. Defendants PCSO DISPATCHER RITZMAN, and DOES 1 to 100 subjected VINTON MILLER to their wrongful conduct, depriving VINTON MILLER of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of VINTON MILLER, Plaintiffs and others would be violated by their acts and/or omissions.

167. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants, PCSO and COUNTY as described above, Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees as set forth above.

168. WHEREFORE, Plaintiffs ESTATE OF VINTON MILLER and STACIE MILLER pray for relief as hereunder appears.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ESTATE OF VINTON MILLER and STACIE MILLER, seeks Judgement as follows:

1.  For an award of compensatory, general, special, and nominal damages (including survival/loss-of-life damages and wrongful death damages under state and federal law) against Defendants COUNTY, and PCSO in excess of $25,000,000, according to proof at trial

2.  For an award of exemplary/punitive damages against Defendants CA STATE PARKS OFFICER MATTHEW YARBROUGH, CHP OFFICER CLAYTON GUILLEMIN, PCSO DISPATCHER RITZMAN, and DOES 1 to 100, in an amount sufficient to deter and make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily

41

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE
PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

protected rights, or were wantonly or oppressively done, and/or constituted oppression and/or malice resulting in great harm;

3. For an award of funeral and/or burial expenses against Defendants CA STATE PARKS OFFICER YARBROUGH, CHP OFFICER CLAYTON GUILLEMIN, PCSO DISPATCHER RITZMAN, and DOES 1 to 100 in the amount of $25,000.

4. For an award for general damages for pain, suffering and disfigurement pre-mortem under Civil Code §377.34, in amounts to be determined according to proof as to Defendants COUNTY, PCSO, CA STATE PARKS OFFICER MATTHEW YARBROUGH, CHP OFFICER CLAYTON GUILLEMIN, PCSO DISPATCHER RITZMAN, and DOES 1 to 100;

5. For an award of actual damages, punitive damages, civil penalties and any other available relief against CHP OFFICER GUILLEMIN, and CA STATE PARKS OFFICER YARBROUGH, PCSO DISPATCHER RITZMAN, and DOES 1 to 100, pursuant to California Civil Code §52, §52.1, and any other statute as may be applicable.

6. For an award of exemplary/punitive damages against Defendants CA STATE PARKS OFFICER YARBROUGH and CHP OFFICER CLAYTON GUILLEMIN, PCSO DISPATCHER RITZMAN, and DOES 1 to 100, under 42 USC § 1983 and California law in an amount sufficient to deter and make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done, and/or constituted oppression and/or malice resulting in great harm:

7. For an award of reasonable attorney's fees and costs, pursuant to title 42, United States Code section 1988; title 29, United States Code §794; title 42, United States Code §12205;

42

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER

DEMAND FOR JURY TRIAL

California Civil Code section 52.1; California Code of Civil Procedure §1021.5; and any other

statute as may be applicable.

8.  For interest;

9.  For an award of any other further relief, as the Court deems fair, just and equitable.

**JURY TRIAL DEMAND**

10. A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF VINTON

MILLER, and STACIE MILLER on behalf of herself.

**MOHSINI LAW, INC**

DATED: September 15, 2025

/s/ Sheila L. Mohsini
SHEILA L. MOHSINI
Attorney for Plaintiffs

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS STEMMING FROM THE
PURSUIT, TRAPPING, SHOOTING, AND KILLING OF VINTON J. MILLER**

**DEMAND FOR JURY TRIAL**